73 A.3d 452

ALEX PEREZ AND CATHY PEREZ, PLAINTIFFS–RESPONDENTS, v. PROFESSIONALLY GREEN, LLC, BRIAN HERE, INDIVIDUALLY, NORMAN TARANTO, INDIVIDUALLY, WEISSMAN ENGINEERING CO., P.C., ROBERT J. WEISSMAN, INDIVIDUALLY, VCA SONS, INC., T/A FREEDOM FENCE, INC., AND VINCENZO ANELLO, INDIVIDUALLY, DEFENDANTS, AND SWIM–WELL POOLS, INC., DEFENDANT–APPELLANT.

Argued January 14, 2013—Decided September 12, 2013.

390

*Jerald J. Howarth* argued the cause for appellant (*Howarth & Associates,* attorneys; *Mr. Howarth* and *Purnima D. Ramlakhan,* on the briefs).

*Edward R. Grossi* argued the cause for respondent (*Mr. Grossi* and *Anthony P. Ambrosio,* attorneys; *Mr. Ambrosio,* on letter in lieu of brief).

Justice PATTERSON delivered the opinion of the Court.

The New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8–1 to –20 (CFA or Act), authorizes an award of attorneys' fees to a plaintiff who "suffers any ascertainable loss of moneys or property, real or personal," as a result of a "method, act, or practice" prohibited by the Act. *N.J.S.A.* 56:8–19. This Court has held that "a plaintiff,

who pleads but cannot survive a motion for summary judgment in respect of the issue of ascertainable loss," may not assert a claim for attorneys' fees under the Act. *Weinberg v. Sprint Corp.,* 173 *N.J.* 233, 253, 801 *A.*2d 281 (2002). In accordance with *Weinberg,* to be entitled to an award of attorneys' fees, a CFA plaintiff must raise a genuine issue of material fact with respect to the issue of ascertainable loss, sufficient to warrant denial of a summary judgment motion filed by a defendant pursuant to *Rule* 4:46–2.

This case requires us to construe the CFA and apply the principles of *Weinberg* in a procedural setting not previously addressed by this Court. Dissatisfied with swimming pool installation work performed by defendant, Swim–Well Pools, Inc. (Swim–Well), plaintiffs Alex and Cathy Perez filed a CFA claim against Swim–Well and moved for summary judgment prior to trial. The trial court granted plaintiffs' motion in part and denied it in part, holding that plaintiffs had demonstrated a technical violation of the CFA but that Swim–Well had raised a genuine issue of material fact as to whether plaintiffs had suffered an ascertainable loss under *N.J.S.A.* 56:8–2. The case proceeded to trial. At the close of plaintiffs' proofs, the trial judge held that plaintiffs had not made a prima facie showing on the issue of ascertainable loss and granted Swim–Well's motion for involuntary dismissal of plaintiffs' CFA claim under *Rule* 4:37–2(b). The trial court denied plaintiffs' post-trial motion for attorneys' fees under *N.J.S.A.* 56:8–19. Plaintiffs appealed, and the Appellate Division reversed, holding that plaintiffs were entitled to attorneys' fees, notwithstanding the denial of their motion for summary judgment and the grant of Swim–Well's motion for involuntary dismissal on the issue of ascertainable loss.

We reverse. The trial court never ruled that there was sufficient evidence for a rational factfinder to find in plaintiffs' favor but rather found, after plaintiffs' proofs at trial, that no rational factfinder could find an ascertainable loss. Thus, in the procedural setting here, plaintiffs did not present a *"bona fide* claim of ascertainable loss that raises a genuine issue of fact" within the

meaning of *Weinberg, supra,* 173 *N.J.* at 253, 801 *A.*2d 281. Accordingly, we conclude that plaintiffs have not established a viable claim for attorneys' fees under *N.J.S.A.* 56:8–19 and that the trial court properly dismissed their CFA claim.

## I.

For purposes of this appeal, we will draw upon the procedural history and the facts of the case as set forth in the parties' briefs and pleadings, as well as the trial court's statements of reasons.

According to plaintiffs, they decided to install a swimming pool, build a fence, patio, retaining walls and walkways, and enhance the landscaping at their home in Franklin Lakes in 2004.[1] Plaintiffs maintain that they signed a contract with Weissman Engineering Co. (Weissman) to prepare a plan for the pool. Plaintiffs assert that they selected Professionally Green, LLC (Professionally Green) to construct the patio, retaining walls and walkways, install a diving board, handle paving and drainage for the project, and provide landscaping. They also represent that they hired VCA Sons, Inc. (VCA) to build a fence around the pool. Plaintiffs maintain that they retained Swim–Well to construct the pool in accordance with Weissman's design. Plaintiffs' complaint alleges that plaintiffs and Swim–Well executed a contract on March 15, 2004.

According to plaintiffs, Weissman's design for the pool was defective and did not comply with municipal regulations. Swim–Well allegedly became aware of the design flaws while construction was underway. Plaintiffs assert that Swim–Well continued to accept payments from them notwithstanding its knowledge of the design defects and refused to remedy those defects in response to plaintiffs' demand. Plaintiffs also allege that Professionally Green made errors in the construction of the patio and the drainage

---

[1] Because the record does not contain the parties' contract, defendants' answers, or the transcripts of the trial, the facts set forth herein are primarily based upon plaintiffs' complaint and the parties' briefs.

system, resulting in flooding, and that VCA constructed the fence too close to a heater, prompting fire inspectors to withhold certification. Plaintiffs claim that errors by all four contractors resulted in an unusable pool, an unsightly condition on their property, and failed municipal inspections. Plaintiffs assert that they were compelled to retain new contractors to complete the work.

Plaintiffs sued Swim–Well and an individual alleged to be associated with Swim–Well, Norman Taranto (Taranto), as well as Professionally Green, Weissman and VCA, and individual defendants alleged to be connected with each contractor. In an amended complaint, filed in March 2009, plaintiffs asserted claims based upon breach of contract, negligence, breach of express and implied warranty, professional malpractice and violations of the CFA and *N.J.A.C.* 13:45A–16.[2] As pled against Swim–Well and Taranto in Count Fifteen of the Amended Complaint, these claims were premised on three alleged deficiencies in the March 15, 2004 contract between plaintiffs and Swim–Well: (1) the absence of "the dates or time period when the work was to begin and to be completed"; (2) the lack of a "guarantee or warranty with respect to the labor and services provided as well as the provision that allows [plaintiffs] to cancel the contract"; and (3) the "[f]ailure to provide mandatory cancellation/warning" to plaintiffs in the contract. Plaintiffs alleged that these violations of *N.J.S.A.* 56:8–2 "resulted in the Plaintiffs having suffered an ascertainable loss of money." In addition to damages, plaintiffs sought "interest and costs as provided by law, as well as all other relief deemed appropriate by the court or provided by statute."

Two months after filing their amended complaint, plaintiffs moved before the trial court for partial summary judgment against Swim–Well, Professionally Green, VCA and the individual

---

[2] These regulations, cited in the Amended Complaint as the "Homeowner Improvement Act," are the "Home Improvement Practices" regulations. *N.J.A.C.* 13:45A–16.1 to –16.2. They were promulgated by the Attorney General pursuant to his authority under the CFA, *N.J.S.A.* 56:8–4. *Cox v. Sears Roebuck & Co.*, 138 *N.J.* 2, 16, 647 *A.2d* 454 (1994).

defendants. As to each defendant, plaintiffs sought an order "dismissing [the defendant's] Answer," declaring that plaintiffs had suffered an ascertainable loss as defined by the CFA, and awarding unspecified attorneys' fees. Although plaintiffs' complete filing is not part of the record, their motion for partial summary judgment against Swim–Well and Professionally Green was evidently premised on the three CFA violations asserted in their amended complaint: the contract's lack of start and end dates for the construction project, the absence of a guarantee or warranty, and the lack of a cancellation provision.

Swim–Well and Taranto responded that the issue of ascertainable loss and plaintiffs' claim for attorneys' fees should be resolved at trial, not at the summary judgment stage. They cross-moved for partial summary judgment on two of the three alleged violations of the CFA: the absence of warranty provisions and cancellation provisions in the contract. Significantly, Swim–Well and Taranto did not cross-move for partial summary judgment dismissing plaintiffs' allegations regarding the absence of start and end dates in the contract.

In a written opinion issued on July 21, 2009, the trial court granted partial summary judgment in favor of plaintiffs and against Swim–Well and Professionally Green, with respect to the absence of start and end dates in the defendants' respective contracts. The court noted that *N.J.A.C.* 13:45A–16.2(a)(12) mandates that home improvement contracts worth more than $500 " 'clearly and accurately set forth in legible form and in understandable language all terms and conditions of the contract, including ... (iv) The dates or time period on or within which the work is to begin and be completed by the seller.' " The court rejected Swim–Well's contention that there was a genuine issue of material fact with respect to this question and recognized that "there are no start or completion dates" in Swim–Well's contract. Consequently, the trial court found a "technical violation" of the CFA.

The trial court, however, denied plaintiffs' partial summary judgment motion with respect to the issue of ascertainable loss. It characterized plaintiffs' alleged ascertainable loss as their inability to use their new pool during the summer of 2004, contrary to their expectations. The trial court determined that defendants' counterarguments gave rise to a genuine issue of material fact as to whether defendants' failure to include the required start and end dates in their contracts caused an ascertainable loss. The court therefore determined that the issue of ascertainable loss should be decided by the jury at trial.

The following day, the trial court entered an order granting Swim–Well's and Taranto's cross-motion for partial summary judgment dismissing plaintiffs' CFA claims premised upon the absence of warranty and cancellation provisions in the parties' contract. Accordingly, the only CFA claim that remained to be tried against Swim–Well was plaintiffs' claim for ascertainable loss resulting from the lack of start and end dates in the contract. According to Swim–Well, plaintiffs' negligence claims against Swim–Well also survived the summary judgment stage. When the case reached trial, Swim–Well, Taranto and Weissman were the only defendants remaining.[3]

The trial was overseen by a different judge from the one who had handled the parties' dispositive motions. At the close of plaintiffs' proofs, Swim–Well moved, pursuant to *Rule* 4:37–2(b), for an involuntary dismissal of plaintiffs' remaining CFA claim. Swim–Well argued that plaintiffs had failed to present evidence that would support a jury finding that the absence of start and end dates for its work in the parties' contract gave rise to an ascertainable loss under *N.J.S.A.* 56:8–19. According to Swim–Well, following the filing of Swim–Well's motion, the trial court permitted plaintiffs to recall plaintiff Cathy Perez to present

---

[3] The record indicates that plaintiffs and Professionally Green settled their dispute but does not reveal how plaintiffs' claims against VCA or the other individual defendants were resolved. Swim–Well, however, represents that the claims against Taranto were dismissed at trial at the close of plaintiffs' case.

additional testimony. The court ruled in Swim–Well's favor, holding that plaintiffs had failed to make a prima facie showing that Swim–Well's technical violation of the CFA caused an ascertainable loss.[4] According to Swim–Well, plaintiffs' negligence claims against Swim–Well and Weissman were submitted to the jury, which returned a verdict of no cause of action on both claims.

Plaintiffs filed a post-trial motion for an award of attorneys' fees and costs pursuant to the CFA, *N.J.S.A.* 56:8–19, which was assigned to a third judge. The trial court held oral argument and thereafter denied plaintiffs' motion in an order dated January 13, 2010, which it supported by a statement of reasons, *Rule* 1:7–4(a). Citing *Weinberg, supra,* 173 *N.J.* at 253, 801 *A.*2d 281, and relying upon *Pron v. Carlton Pools, Inc.,* 373 *N.J.Super.* 103, 113, 860 *A.*2d 973 (App.Div.2004), the court held that by virtue of the trial judge's grant of Swim–Well's motion for involuntary dismissal at the close of plaintiffs' proofs, plaintiffs had failed to present sufficient evidence of an ascertainable loss. The court held that plaintiffs were therefore not entitled to recover attorneys' fees under the CFA.

Plaintiffs did not appeal the trial court's grant of Swim–Well's motion for an involuntary dismissal on the issue of ascertainable loss or the court's decision on their claims based on the contract's lack of warranty and cancellation provisions. Instead, plaintiffs appealed only the trial court's denial of their attorneys' fee application under the CFA.

The Appellate Division reversed the trial court's determination. It held that to establish a bona fide claim of ascertainable loss that is a prerequisite to an attorneys' fee award, a CFA plaintiff need not prevail on both a summary judgment motion and a motion for involuntary dismissal at trial. The panel ruled that the CFA does not require a factfinder's resolution of the issue of ascertainable loss in order for plaintiffs to prevail on their claim for attorneys'

---

[4] The trial court's decision granting Swim–Well's motion for involuntary dismissal of plaintiffs' CFA claim is not part of the record before this Court.

fees. It reinstated plaintiffs' claim for attorneys' fees and re-manded the case to the trial court for further proceedings.

We granted Swim–Well's petition for certification. 209 *N.J.* 99, 35 *A.*3d 682 (2012).

## II.

Swim–Well contends that the CFA's ascertainable loss require-ment mandates proof of a causal nexus between the defendant's technical violation of the Act and damage sustained by plaintiffs. It argues that to support an attorneys' fee award, a claim of ascertainable loss must survive a defendant's *Rule* 4:46–2 motion for summary judgment, if such a motion is made, or a *Rule* 4:37–2(b) motion for an involuntary dismissal at trial, decided under a test that is the functional equivalent of the summary judgment standard. Swim–Well contends that unless a claim for ascertain-able loss actually reaches the factfinder, it falls short of the showing necessary to justify an attorneys' fee award. Here, according to Swim–Well, all that plaintiffs established through their motion for summary judgment was that the issue of ascer-tainable loss would be decided at trial.

Plaintiffs agree that the standards for summary judgment and involuntary dismissal are similar, as explained by the Appellate Division in *Pron, supra,* 373 *N.J.Super.* at 112–13, 860 *A.*2d 973. They argue, however, that *Pron* represents an improper expansion of *Weinberg* that undermines the CFA's remedial goals. Plaintiffs contend that, contrary to the CFA's policy objectives, the trial court's ruling here compels CFA plaintiffs to gamble on the outcome of a jury determination on the issue of ascertainable loss. Consequently, the pool of attorneys willing to prosecute CFA claims will be limited. Plaintiffs accordingly urge the Court to affirm the Appellate Division's determination reinstating their claim for attorneys' fees.

## III.

■ The sole issue raised in this appeal is a question of law: whether plaintiffs may recover attorneys' fees under *N.J.S.A.*

56:8–19, given the denial of their motion for partial summary judgment on the issue of ascertainable loss and the grant of defendant's motion for involuntary dismissal at trial. Our review is de novo; "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995); *accord McDade v. Siazon*, 208 *N.J.* 463, 473, 32 *A.*3d 1122 (2011); *Estate of Hanges v. Metro. Prop. & Cas. Ins. Co.*, 202 *N.J.* 369, 382–83, 997 *A.*2d 954 (2010).

 We construe *N.J.S.A.* 56:8–19 in accordance with established rules of statutory construction. Our goal "is to determine and effectuate the Legislature's intent." *Bosland v. Warnock Dodge, Inc.*, 197 *N.J.* 543, 553, 964 *A.*2d 741 (2009). To that end, we first examine the statute's plain language, giving its "words their ordinary meaning and significance," and reading those words in the context of "related provisions so as to give sense to the legislation as a whole." *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). It is not the Court's function to " 'rewrite a plainly-written enactment of the Legislature [ ]or presume that the Legislature intended something other than that expressed by way of the plain language.' " *Ibid.* (alteration in original) (quoting *O'Connell v. State*, 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002)).

 The Legislature enacted the CFA in 1960 to permit the Attorney General to combat consumer deception, and, as part of a 1971 amendment, authorized a private right of action. *Cox, supra*, 138 *N.J.* at 14–15, 647 *A.*2d 454. The Act bars a broad range of commercial practices:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]
>
> [*N.J.S.A.* 56:8–2.]

"Although initially designed to combat 'sharp practices and dealings' that victimized consumers by luring them into purchases through fraudulent or deceptive means," the Act also "is designed to protect the public even when a merchant acts in good faith." *Cox, supra,* 138 *N.J.* at 16, 647 *A.*2d 454 (quoting *D'Ercole Sales, Inc. v. Fruehauf Corp.,* 206 *N.J.Super.* 11, 23, 501 *A.*2d 990 (App.Div.1985)).

Among the broad powers the Legislature conferred upon the Attorney General in the CFA is the authority to "promulgate such rules and regulations, and prescribe such forms as may be necessary, which shall have the force of law." *N.J.S.A.* 56:8–4. The violation of such regulations gives rise to a discrete category of CFA violations. *See Cox, supra,* 138 *N.J.* at 17, 647 *A.*2d 454 (explaining that "[u]nlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations[;]" the latter of which "is based on regulations enacted under *N.J.S.A.* 56:8–4").

Among the regulations promulgated pursuant to *N.J.S.A.* 56:8–4 are several that address home improvement contracts such as the agreement at issue here. Pursuant to *N.J.S.A.* 56:8–4, the Division of Consumer Affairs enacted the "Home Improvement Practices" regulations, *N.J.A.C.* 13:45A–16.1 to –16.2, "to provide 'objective assurances' of the 'terms and criteria according to which home-improvement work [should] be done.'" *Cox, supra,* 138 *N.J.* at 16, 647 *A.*2d 454 (alteration in original) (quoting 17 *N.J.R.* 679 (Mar. 18, 1985)). Pertinent to the contract at issue here, *N.J.A.C.* 13:45A–16.2(a)(12) provides:

> All home improvement contracts for a purchase price in excess of $500.00, and all changes in the terms and conditions thereof shall be in writing. Home improvement contracts which are required by this subsection to be in writing, and all changes in the terms and conditions thereof, shall be signed by all parties thereto, and shall clearly and accurately set forth in legible form and in understandable language all terms and conditions of the contract, including, but not limited to, the following:
>
> . . . .
>
> iv. The dates or time period on or within which the work is to begin and be completed by the seller[.]

Swim–Well's omission of the required starting and ending dates in its contract with plaintiffs, in contravention of *N.J.A.C.* 13:45A–16.2(a)(12), was the "technical violation" of the CFA found by the trial court.

■ A finding of a CFA violation, however, does not end the inquiry. The CFA's broad and essential remedial provision requires a private plaintiff to demonstrate that the CFA violation resulted in an ascertainable loss:

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.
>
> [*N.J.S.A.* 56:8–19.]

"[T]he plain language of the Act unmistakably makes a claim of ascertainable loss a prerequisite for a private cause of action." *Weinberg, supra,* 173 *N.J.* at 251, 801 *A.*2d 281; *accord Furst v. Einstein Moomjy, Inc.,* 182 *N.J.* 1, 12, 860 *A.*2d 435 (2004); *Meshinsky v. Nichols Yacht Sales, Inc.,* 110 *N.J.* 464, 473, 541 *A.*2d 1063 (1988).

■ The requirement that a private plaintiff prove an ascertainable loss "operates as an integral check upon the balance struck by the CFA between the consuming public and sellers of goods." *Thiedemann v. Mercedes–Benz USA, LLC,* 183 *N.J.* 234, 251, 872 *A.*2d 783 (2005). However, "[t]o say that a plaintiff must present a claim of ascertainable loss to have standing under the Act does not require that the claim ultimately prove successful." *Weinberg, supra,* 173 *N.J.* at 251, 801 *A.*2d 281. "A claim may be unsuccessful for any number of reasons even though it was brought in good faith and has support in the facts." *Ibid.*

■ When a plaintiff can demonstrate a violation of the CFA, as did plaintiffs here, and a resulting ascertainable loss, the CFA provides broad relief that may include an award of attorneys'

fees. *See id.* at 249–50, 801 *A.*2d 281. The attorneys' fee provision, a component of the 1971 amendments to the CFA, was intended to ensure " 'that the financial cost to the private plaintiff was minimized and compensation maximized.' " *Cox, supra,* 138 *N.J.* at 24, 647 *A.*2d 454 (quoting *Skeer v. EMK Motors, Inc.,* 187 *N.J.Super.* 465, 471, 455 *A.*2d 508 (App.Div.1982)). It was also intended "to provide a financial incentive for members of the bar to become ' "private attorneys general" ... to enlarge fraud-fighting authority.' " *Gonzalez v. Wilshire Credit Corp.,* 207 *N.J.* 557, 585, 25 *A.*3d 1103 (2011) (quoting *Lemelledo v. Beneficial Mgmt. Corp. of Am.,* 150 *N.J.* 255, 268, 696 *A.*2d 546 (1997)). The attorneys' fee provision also serves another central objective of the CFA: " 'to punish the wrongdoer and to deter others from engaging in similar fraudulent practices.' " *Id.* at 585, 25 *A.*3d 1103 (quoting *Furst, supra,* 182 *N.J.* at 12, 860 *A.*2d 435).

This Court has twice considered the issue of proof of ascertainable loss as a predicate to an award of attorneys' fees. In *Cox, supra,* 138 *N.J.* at 9–10, 647 *A.*2d 454, a jury returned a verdict in favor of the plaintiff on his CFA claim arising from a home improvement contract, but the trial court granted a motion for judgment notwithstanding the verdict and found that plaintiff had failed to prove an ascertainable loss. The Appellate Division affirmed. *Id.* at 11, 647 *A.*2d 454. This Court, however, reversed, holding that the defendant's conduct violated the CFA and directing an award of damages and attorneys' fees on remand. *Id.* at 25, 647 *A.*2d 454. It held that "a consumer-fraud plaintiff can recover reasonable attorneys' fees, filing fees, and costs if that plaintiff can prove that the defendant committed an unlawful practice, even if the victim cannot show any ascertainable loss and thus cannot recover treble damages." *Id.* at 24, 647 *A.*2d 454 (citing *Performance Leasing Corp. v. Irwin Lincoln–Mercury,* 262 *N.J.Super.* 23, 31, 34, 619 *A.*2d 1024 (App.Div.), *certif. denied,* 133 *N.J.* 443, 627 *A.*2d 1148 (1993)).

Nearly a decade later, this Court refined its approach to the issue of ascertainable loss in *Weinberg*. There, the class repre-

sentative named in a national class action alleged that Sprint Corporation (Sprint) induced customers to purchase its long-distance telephone services through fraudulent advertising. *Weinberg, supra,* 173 *N.J.* at 237–38, 801 *A.*2d 281. Plaintiff asserted a CFA claim for damages, attorneys' fees and costs. *Id.* at 239, 801 *A.*2d 281. Following discovery, plaintiff and Sprint cross-moved for summary judgment. *Id.* at 240, 801 *A.*2d 281. The trial court granted Sprint's summary judgment motion and dismissed plaintiff's CFA claim, including his claim for attorneys' fees, ruling in part that "plaintiff could not demonstrate any genuine issue of material fact to support his claim of ascertainable loss as a result of defendant's conduct." *Ibid.* The Appellate Division affirmed. *Ibid.*

This Court agreed with the trial court and Appellate Division that the plaintiff had not made a showing of ascertainable loss sufficient to warrant an award of attorneys' fees. *Ibid.* Clarifying its holding in *Cox,* the Court held that "to have standing . . . a private party must plead a claim of ascertainable loss that is capable of surviving a motion for summary judgment." *Id.* at 237, 801 *A.*2d 281. It construed *N.J.S.A.* 56:8–19 to require a claim of ascertainable loss that survives the scrutiny of a summary judgment motion and is submitted to a jury as a basis for an attorneys' fee award:

[T]he plaintiff with a *bona fide* claim of ascertainable loss that raises a genuine issue of fact requiring resolution by the factfinder would be entitled to seek also injunctive relief when appropriate, and to receive an award of attorneys' fees, even if the plaintiff ultimately loses on his damage claim but does prove an unlawful practice under the Act. The Act's remedial purposes are promoted thereby and the Legislature's requirement of ascertainable loss for a private cause of action is respected.

[*Id.* at 253, 801 *A.*2d 281.]

As the Court noted in *Weinberg,* in light of the trial court's grant of summary judgment dismissing plaintiff's CFA claim, there was no genuine issue of material fact that entitled the plaintiff to present his claim for ascertainable loss to a jury and therefore no basis for an award of attorneys' fees. *Id.* at 253–54, 801 *A.*2d 281.

In *Pron*, the Appellate Division considered the issue of ascertainable loss in a procedural setting similar, but not identical, to that of the present case. There, the homeowner plaintiff sued a pool contractor retained to install a pool on his property, alleging, among other claims, that the contractor committed a CFA violation that caused discoloration and other damage to the plaster finish of the pool. *Pron, supra*, 373 *N.J.Super.* at 106, 860 *A.*2d 973. At the close of the plaintiff's proofs, the defendant moved for a directed verdict on several of the plaintiff's claims other than his CFA claim. *Id.* at 107, 860 *A.*2d 973. The trial court, sua sponte, found a violation of the CFA, contending that the contractor had subcontracted electrical and plumbing work to other companies despite written assurances that it would not delegate any facet of the project to others. *Id.* at 106–07, 860 *A.*2d 973. It determined that, although "defendant committed a technical violation of the CFA[,] ... plaintiff did not suffer any ascertainable loss as a result of this violation because the [defendant contractor's] use of the subcontractors was unrelated to" the pool damage at issue. *Id.* at 107, 860 *A.*2d 973. Relying upon *Cox*, but not *Weinberg*, the trial court in *Pron* awarded attorneys' fees despite its grant of the defendant's motion for involuntary dismissal of plaintiff's claim for ascertainable loss. *Ibid.*

The Appellate Division reversed. *Id.* at 105, 860 *A.*2d 973. Analogizing the trial court's grant of summary judgment in *Weinberg* to the court's sua sponte grant of involuntary dismissal in *Pron*, the panel held that no prima facie case of ascertainable loss had been presented. *Id.* at 111–13, 860 *A.*2d 973.

In this case, the trial judge in granting an involuntary dismissal under *R.* 4:37–2(b) determined that plaintiff had shown no ascertainable loss and no right to relief.... A defendant's motion for an involuntary dismissal at the close of plaintiff's case, even where the trial is by the court without a jury, should be denied, if the plaintiff has proved a prima facie case. A prima facie case for purposes of *R.* 4:37–2 means "any evidence including any favorable inference to be drawn therefrom which could sustain a judgment in plaintiff's favor." Conversely, a "dismissal is appropriate when no rational jury could conclude from the evidence that an essential element of the plaintiff's case is present."

[*Id.* at 111, 860 *A.*2d 973 (citation omitted) (quoting Pressler, *Current N.J. Court Rules*, comment 2 on *R.* 4:37–2(b) (2005)).]

As construed by the Appellate Division, the trial court's involuntary dismissal—like the grant of summary judgment in *Weinberg*—was tantamount to a finding that the plaintiff had no bona fide ascertainable loss claim. *Id.* at 112–13, 860 *A.*2d 973. While *Pron* did not involve the summary judgment proceedings that took place in this case, it applied *Weinberg* to a *Rule* 4:37–2(b) motion for involuntary dismissal such as that at issue here. *See ibid.*

## IV.

■ Guided by the principles of *Weinberg*, we consider the significance of the two dispositive motions at issue in this case: plaintiffs' pretrial motion for summary judgment under *Rules* 4:46–1 and 4:46–2, which the trial court granted as to a CFA violation but denied on the issue of ascertainable loss, and defendant's motion for an involuntary dismissal of the CFA claim at the close of plaintiffs' case under *Rule* 4:37–2(b), which the trial court granted. Considering each of the trial court's determinations, our task is to decide whether plaintiffs have presented "a *bona fide* claim of ascertainable loss that raises a genuine issue of fact requiring resolution by the factfinder." *Weinberg, supra,* 173 *N.J.* at 253, 801 *A.*2d 281.

■ By moving for summary judgment on ascertainable loss, plaintiffs invoked the standard of *Rule* 4:46–2. That *Rule* compels the grant of summary judgment if the discovery and any affidavits "show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." *R.* 4:46–2(c). The *Rule* defines the genuine issue of fact that warrants denial of the motion:

> An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.
>
> [*Ibid.*; *accord Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995).]

Thus, the court's task is to determine whether a rational factfinder could resolve the alleged disputed issue in favor of the non-moving

party—" '[a]ll inferences of doubt are drawn against the moving party and in favor of the opponent of the motion.' " *Fielder v. Stonack,* 141 *N.J.* 101, 127, 661 *A.*2d 231 (1995) (alteration in original) (quoting *Shanley & Fisher, P.C. v. Sisselman,* 215 *N.J.Super.* 200, 211, 521 *A.*2d 872 (App.Div.1987)); *accord Shelcusky v. Garjulio,* 172 *N.J.* 185, 201, 797 *A.*2d 138 (2002).

This familiar standard was applied by the trial court to plaintiffs' motion for partial summary judgment on their CFA claim. The trial court granted plaintiffs' motion, ruling that no rational factfinder could conclude that Swim–Well's contract lacking start and end dates met the requirements of *N.J.A.C.* 13:45A–16.2(a)(12). As to ascertainable loss, however, it denied plaintiffs' motion for summary judgment. In doing so, the court determined that a rational factfinder could agree with the defendant that plaintiffs sustained no ascertainable loss. *R.* 4:46–2; *see also Thiedemann, supra,* 183 *N.J.* at 238, 872 *A.*2d 783 (explaining summary judgment should be entered when CFA plaintiff fails to produce evidence from which factfinder could infer ascertainable loss); *Byrne v. Weichert Realtors,* 290 *N.J.Super.* 126, 136–37, 675 *A.*2d 235 (App.Div.1996) (finding grant of summary judgment inappropriate where material issue raised regarding whether defendant's alleged misrepresentations and omissions amounted to CFA violations). Swim–Well did not file a motion for summary judgment on the issue of ascertainable loss. Thus, the trial court was not called upon to decide a pretrial dispositive motion considering the facts in the light most favorable to plaintiffs. In the absence of either the entry of partial summary judgment in plaintiffs' favor, or the denial of a defense motion for summary judgment, the viability of plaintiffs' ascertainable loss claim was untested in the pretrial stage of this case. Accordingly, the summary judgment proceedings in this case do not determine plaintiffs' right to attorneys' fees under *N.J.S.A.* 56:8–19.

■ At the close of plaintiffs' proofs, however, the ascertainable loss claim was subjected to a test equivalent to that applied in summary judgment proceedings. A motion for involuntary dis-

missal pursuant to *Rule* 4:37–2(b) requires the trial court to scrutinize the evidence presented until that point and to determine if that evidence would support a verdict in the plaintiff's favor:

After having completed the presentation of the evidence on all matters other than the matter of damages (if that is an issue), the plaintiff shall so announce to the court, and thereupon the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal of the action or of any claim on the ground that upon the facts and upon the law the plaintiff has shown no right to relief. Whether the action is tried with or without a jury, such motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor.

[*R.* 4:37–2(b).]

As this Court noted in *Schneider v. Simonini*, 163 *N.J.* 336, 360, 749 *A.*2d 336 (2000), *cert. denied*, 531 *U.S.* 1146, 121 *S.Ct.* 1083, 148 *L.Ed.*2d 959 (2001), "[a]nalytically, the standard for determining summary judgment motions is similar to that required for an involuntary dismissal under *Rule* 4:37–2(b)." *See also* Pressler & Verniero, *Current N.J. Court Rules*, comment 2.1 on *R.* 4:46–2 (2013) (reformulation of *Rule* 4:46–2(b) following *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146, "while not abandoning the *Judson* [*v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 75, 110 *A.*2d 24 (1954) ] concept, nonetheless linked the summary judgment standard more explicitly to *R.* 4:37–2(b)"). The judicial response to a motion for involuntary dismissal at trial "is quite a mechanical one." *Dolson v. Anastasia,* 55 *N.J.* 2, 5, 258 *A.*2d 706 (1969). "The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." *Id.* at 5–6, 258 *A.*2d 706. Under that standard, "dismissal is appropriate when no rational jury could conclude from the evidence that an essential element of the plaintiff's case is present." Pressler & Verniero, *supra,* comment 2.1 on *R.* 4:37–2.

In this case, *Rule* 4:37–2 provided the test under which the trial court evaluated plaintiffs' evidence in support of their ascertainable loss claim. After Swim–Well moved to dismiss plaintiffs' claim for ascertainable loss following plaintiffs' presentation of proofs to the jury, the trial court held that plaintiffs' claim fell

short of the *Rule* 4:37–2 standard. Having considered plaintiffs' evidence and the legitimate inferences therefrom, the trial court determined that no rational jury could find ascertainable loss. As in *Pron, supra,* "[d]efendant was not called upon or indeed permitted to present a defense because, as a matter of law, plaintiff[s] failed to prove a prima facie case of an essential element for a private cause of action under the CFA." *See* 373 *N.J.Super.* at 113, 860 *A.*2d 973.

The trial court's grant of involuntary dismissal of plaintiffs' ascertainable loss claim, unchallenged on appeal, thus guides the resolution of the issue of attorneys' fees under the CFA. That determination is analogous to the trial court's grant of the defendant's motion for summary judgment in *Weinberg.* A trial court's grant of a defendant's summary judgment motion under *Rule* 4:46–2 or a defendant's motion for involuntary dismissal under *Rule* 4:37–2(b) confirms that no bona fide ascertainable loss claim exists. Under either rule, a defendant will not prevail if the evidence, viewed in the light most favorable to the plaintiff, would permit a rational factfinder to conclude that the plaintiff has sustained an ascertainable loss. *See e.g., Shelcusky, supra,* 172 *N.J.* at 201, 797 *A.*2d 138; *Kernan v. One Wash. Park Urban Renewal Assocs.,* 154 *N.J.* 437, 455, 713 *A.*2d 411 (1998); *Berger v. Shapiro,* 30 *N.J.* 89, 101, 152 *A.*2d 20 (1959).

The principles of *Weinberg* require that we reverse the Appellate Division's ruling in this case. Although plaintiffs' claim for ascertainable loss was tested by a different motion from the summary judgment motion addressed in *Weinberg,* it fell short of a similar standard, and did not rise to the level of a bona fide claim within the meaning of *N.J.S.A.* 56:8–19. Thus, a reward of attorneys' fees in this procedural setting would directly contravene *N.J.S.A.* 56:8–19. Accordingly, plaintiffs' claim for attorneys' fees under *N.J.S.A.* 56:8–19 was properly dismissed by the trial court.

## V.

The judgment of the Appellate Division is reversed.

*For reversal and remandment*—Chief Justice RABNER, and Justices LaVECCHIA ALBIN HOENS PATTERSON, and Judges RODRÍGUEZ (temporarily assigned) and CUFF (temporarily assigned)—7.

*Opposed*—None.