# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3014-18T3

B.H.R.,

    Plaintiff-Appellant,

v.

I.A.K.,

    Defendant-Respondent.

_____

Argued on December 11, 2019 – Decided January 8, 2020

Before Judges Koblitz, Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-0546-18.

Erica Hernandez De Luna argued the cause for appellant (Northeast New Jersey Legal Services, attorneys; Erica Hernandez De Luna, of counsel and on the briefs).

Nirmalan Nagulendran argued the cause for respondent (Miller Meyerson & Corbo, attorneys; Nirmalan Nagulendran, on the brief).

PER CURIAM

Plaintiff B.H.R. appeals from the dismissal of her temporary restraining order (TRO), issued pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35, at the end of her testimony, because defendant had not contacted her in sixteen months even though he was not served with the TRO. We reverse, reinstate the TRO, and remand for a new trial because the court failed to properly consider the factors set forth in N.J.S.A. 2C:25-29(a) as required by Silver v. Silver, 387 N.J. Super. 112, 125–27 (App. Div. 2006) and A.M.C. v. P.B., 447 N.J. Super. 402, 412–14 (App. Div. 2016).

## I. Plaintiff's Testimony.

The parties married in Pakistan in 2015, and have one child in common, a son who is currently three years old. Plaintiff also has a daughter from a previous relationship. In March 2016, plaintiff moved to the United States and later petitioned for a visa for her husband.

In June 2017, defendant arrived in the U.S. and began living with plaintiff. On August 28, 2017, plaintiff filed for a TRO against defendant, alleging that defendant subjected her to assault, terroristic threats, and harassment. Defendant was not served with the TRO until January 2019.

A-3014-18T3

At trial plaintiff testified to the following information. Defendant refused to give her permission to socialize with her friend(s), did not allow her to take the children to the park, and would sometimes threaten her. Defendant began making statements such as if you don't follow my instructions "you will see what kind of . . . consequences you [will] face" and "no one can do anything for you."

In both July and August 2017, defendant assaulted her "three to four times." In July 2017, defendant punched her twice in the arm when she spoke about his failure to pay rent. On August 14, 2017, defendant pushed her while they were arguing about bank information.

On August 27, 2017, plaintiff informed defendant that she needed to go to the hospital as she was pregnant and had some health complications. Defendant demanded that plaintiff provide proof that she was pregnant with his child or "go and get the abortion." Both parties began to argue and their son, who was on the bed, started crying. Defendant then pushed their son "from the bed to the floor" and when she tried to "save [the] boy," defendant grabbed her by the hair and struck her head against the wall. Defendant then told her that "if [she] call[s] the police [he] [will] kill [her] . . . [her] children . . . and [her] family." The parties' landlord arrived and said he was going to call the police. When defendant realized the police were being called, he took his clothing and ran out

of the apartment.  Plaintiff, who was pregnant with the parties' second child, suffered a miscarriage shortly thereafter.

The parties did not communicate at all from the time defendant left the apartment until the final hearing, approximately sixteen months.  Plaintiff planned on filing for a divorce.

## II. Court's Decision.

After plaintiff's testimony, defendant moved to dismiss the case on the grounds that the second prong of Silver had not been established.  The court stated:

> A lot of the testimony seemed to involve marital issues, problems about the rent . . . things of that nature, which I really obviously believe were domestic contretemps.  However, she has testified that she was pushed and she was hit on a number of occasions.
>
> Now, usually, that alone . . . would constitute a need for a restraining order.  The difference in this case . . . is that there's been no contact by the defendant for [fifteen] months, or [sixteen] months . . . a significant period of time, and . . . the record is clear, he was served on January 18, 2019.  So, it wasn't like he was served with the restraining order and just doing what he was supposed to do.
>
> . . . I don'[t] think we have evidence here to establish a need for the restraining order under the circumstances, even the plaintiff's testimony on redirect saying, he said he only married me for my green card, and you can do what you want, which sounds like

4

somebody who is wiping his hands clean of the . . . situation, more than somebody who is obsessed with controlling somebody, and that . . . statement was allegedly made, or made twice at the end of July and August of 2017, again.

. . . .

. . . So, I do find that . . . this is a bar under <u>Silver v. Silver</u>. There's just not a need, in my mind, for the issuance of the final restraining order.

### III. <u>Legal Discussion.</u>

Our review of a trial judge's factual findings are limited. <u>Cesare v. Cesare</u>, 154 N.J. 394, 411 (1998). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." <u>Id.</u> at 411–12. Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, [we] should accord deference to family court factfinding." <u>Id.</u> at 413. "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" <u>Id.</u> at 412 (quoting <u>In re Return of Weapons to J.W.D.</u>, 149 N.J. 108, 117 (1997)).

Where our review addresses a question of law, however, a "trial judge's findings are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles." <u>N.J. Div. of Youth & Family Servs. v. Z.P.R.</u>, 351 N.J. Super. 427, 434 (App. Div. 2002) (citing

A-3014-18T3

Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). We review questions of law de novo. Smith v. Millville Rescue Squad, 225 N.J. 373, 387 (2016).

We ordinarily defer to factual findings when based on trial testimony. Pascale v. Pascale, 113 N.J. 20, 33 (1988). Here, however, the court made no credibility assessments, and treated plaintiff's testimony as true, similar to a summary judgment evaluation. We review a summary judgment decision de novo. Conley v. Guerrero, 228 N.J. 339, 346 (2017). We also review the dismissal at the end of the plaintiff's case de novo. See Perez v. Professionally Green, LLC, 215 N.J. 388, 399 (2013). The trial court's decision was clearly mistaken because the dismissal based solely on the lack of defendant's contact with plaintiff failed to consider the six required factors specified in N.J.S.A. 2C:25-29(a).

When considering a domestic violence complaint, a court must first determine whether the plaintiff can demonstrate, by a preponderance of credible evidence, that the defendant has committed a predicate act under N.J.S.A. 2C:25-19(a). Silver, 387 N.J. Super. at 125. Under N.J.S.A. 2C:25-19(a), a defendant commits domestic violence if he assaults the plaintiff, pursuant to N.J.S.A. 2C:12-1. N.J.S.A. 2C:25-19(a)(2). "Under N.J.S.A. 2C:12-1(a)(1), a

person is guilty of simple assault if s/he '[a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another.'" A.M.C., 447 N.J. Super. at 410 (quoting N.J.S.A. 2C:12-1(a)(1)). "N.J.S.A. 2C:11-1(a) defines 'bodily injury' as 'physical pain, illness or any impairment of physical condition.'" Ibid. (quoting N.J.S.A. 2C:11-1(a)).

After a court determines that a defendant has committed one of the predicate acts enumerated in N.J.S.A. 2C:25-19(a), the court must then determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C: 25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. The courts should consider, but are not limited to, the following factors relevant here:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> [N.J.S.A. 2C:25-29(a)(1) to (4).]

7

"When the predicate act is an offense that inherently involves the use of physical force and violence, the decision to issue an FRO[1] 'is most often perfunctory and self-evident.'" A.M.C., 447 N.J. Super. at 417 (quoting Silver, 387 N.J. Super. at 127).

In A.M.C. we reversed a trial court's denial of an FRO where the trial court found the defendant committed the predicate offense of assault, but denied the FRO because the order was not necessary to protect the plaintiff. 447 N.J. Super. at 410–18. The trial court determined the plaintiff did not need ongoing protection because: 1) the defendant, who was unaware that a TRO was issued against him, had no desire to have a continuing relationship with the plaintiff and did not try to communicate with her after she left the marital home; 2) the parties did not have any children together; and 3) the short nature of the parties' marriage as well as the plaintiff's ability to establish only two instances of domestic violence, despite alleging many others, illustrated that an FRO was not necessary to protect the plaintiff from future acts of violence. Id. at 411–12.

In reversing the trial courts' decision, we found the parties' childlessness should not adversely affect the plaintiff's entitlement to injunctive relief. Id. at 415. We also found the defendant's conduct after the plaintiff left the marital

---

[1] Final restraining order.

home and the brevity of the parties' marriage were not relevant in deciding whether an FRO should be issued under the second prong of Silver. Id. at 416. The trial judge's findings were "based more on speculation than evidence in the record" as there was "no rational basis for the judge to use the duration of the marriage as a reliable predictor of [the] defendant's future conduct with [the] plaintiff" and the "judge minimized one of the principal concerns that drove our analysis in Silver: [w]hether the predicate offense involved a violent act." Id. at 416.

As in A.M.C., the trial court here also minimized the violent nature of defendant's actions. Although the trial court acknowledged that usually the presence of physical violence "alone . . . would constitute a need for a restraining order," the court nonetheless dismissed the TRO on the basis that the defendant, who had not been served with the TRO, did not try to contact plaintiff for approximately sixteen months after the TRO was entered. In support of its finding, the trial court stated a restraining order was not necessary under the circumstances as plaintiff's testimony that defendant "only married me for my green card . . . sounds like somebody who is wiping his hands clean of the . . . situation."

9

These findings are based on speculation rather than evidence in the record. Indeed, plaintiff testified that defendant made the "you can do what you want" statement once in July of 2017 and continued to engage in acts of violence the following month. Additionally, the parties have a young son, so they will likely remain in contact concerning visitation and child support for years to come. Considering the alleged repeated physical violence and the likely future contact between the parties, the TRO should not have been dismissed on defendant's motion after plaintiff testified. We therefore reverse, reinstate the TRO, and remand for a new trial. We do not opine about the ultimate outcome of that trial.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3014-18T3