# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0862-23

J.M.,[1]

    Plaintiff-Appellant,

v.

K.A.K.,

    Defendant-Respondent.

_____

Submitted October 2, 2024 – Decided October 28, 2024

Before Judges Currier and Marczyk.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FV-15-0146-24.

Law Offices of Richard A. Amdur, Jr., LLC, attorney for appellant (Richard A. Amdur, Jr., of counsel and on the brief).

Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials for the confidentiality of the victim pursuant to Rule 1:38-3(d)(10).

Plaintiff appeals from the October 17, 2023 order dismissing his Temporary Restraining Order (TRO) and denying his application for a Final Restraining Order (FRO) under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. The court granted defendant's motion for dismissal after the close of plaintiff's evidence.

Because plaintiff presented sufficient evidence regarding the predicate acts alleged in the TRO and must be accorded all inferences that can be drawn from the evidence at that juncture, we are satisfied reasonable minds could have differed regarding the predicate acts after hearing plaintiff's evidence. Therefore, the court mistakenly granted the motion for an involuntary dismissal under Rule 4:37-2(b). We reverse the order for dismissal and remand to the trial court for a new trial.

Plaintiff and defendant were in a prior romantic relationship and lived together for approximately six months. In or around July 2021, both parties obtained TROs against one another. After a trial, the court granted defendant an FRO; plaintiff's TRO was dismissed. In September 2022, plaintiff obtained a second TRO against defendant, which was subsequently dismissed. In January 2023, plaintiff moved to dismiss defendant's FRO; the motion was denied in June 2023.

A-0862-23

This appeal arises out of the TRO obtained by plaintiff in July 2023.  In the domestic violence complaint, plaintiff alleged defendant was tracking his location through a cell phone application, following him, and had filed numerous police reports stating plaintiff had violated the FRO.  Plaintiff alleged the predicate acts of stalking and harassment.

During trial, plaintiff testified that during the relationship, defendant set up the "Life360" app (the app) on plaintiff's phone.  The app can be used to track a phone's location.  Plaintiff stated that on July 17, 2023, he opened the app for the first time since the parties had ended their relationship and became aware that defendant could track his location.  Because defendant had turned off her location services, plaintiff could not in turn track defendant's location.

Plaintiff testified that after becoming aware of this, he contacted two local police departments and submitted OPRA[2] requests for any police reports in which plaintiff was named.  Plaintiff stated he received fifty-five police reports mentioning him in response to his requests.  Plaintiff said he became concerned that defendant was tracking his location through the app, following him, and filing the police reports to cause plaintiff to violate the July 2021 FRO.  He testified he lives in fear of being followed.

---

[2] Open Public Records Act, N.J.S.A 47:1A-1 to -13.

A-0862-23

Plaintiff explained,

> I fear that [defendant is] trying to do anything she can to ruin my life. Whether it's post stuff online, tell people where I live, follow me, try to get me violated . . . I live in fear daily. I can't go to the food store. I can't go to the restaurant next to where I live to have lunch. Every time I turn around, I'm being followed, and I live in fear. [A]nd it's not fun.

Plaintiff testified further that on "multiple" occasions he was approached by police in connection with defendant and on one occasion he was charged with violating the FRO. According to plaintiff, on that occasion, defendant followed plaintiff and confronted him in a store. Plaintiff testified: "I g[o]t a [TRO] against [defendant]. Two weeks after that, she followed me into [the store], cornered me and pointed her cell phone at me. And then I gave the middle finger for her pointing the phone at me." He stated he was found guilty of violating the FRO.

After plaintiff rested his case, defendant requested the court dismiss the TRO as "a specious, nearly frivolous application." Defendant asserted plaintiff had not established a predicate act or "the other prong of Silver.[3]" Plaintiff responded he had satisfied the predicate act of stalking. He noticed the app, he saw defendant was tracking his location, and he was afraid.

---

[3] Silver v. Silver, 387 N.J. Super 112, 125-27 (App. Div. 2006).

A-0862-23

The trial court found plaintiff had not proven a prima facie case of either the predicate act of harassment or stalking and dismissed the TRO. In its oral decision, the trial judge discussed the act of harassment as defined under N.J.S.A. 2C:33-4 and reasoned:

> There's no history—there's no repeated committed acts with the purpose to alarm. At the most, there's an application on his phone that has not been linked that the defendant put it there on his phone; that he just said he found the app and he opened it, and defendant could follow the plaintiff, but plaintiff couldn't follow the defendant. . . . I just don't know how that's repeated committed acts with purpose to do anything.

The court also found plaintiff's testimony did not establish any proof of the predicate offense of stalking under N.J.S.A. 2C:12-10. The trial judge explained:

> There's no proof. I don't know. He has fears . . . she'll do anything to ruin his life. Fears of being followed, but he doesn't offer the [c]ourt . . . anything showing that he was ever followed. He said there was only one interaction. The police were there. There's a violation of a restraining order that he received at a [store] [where plaintiff pointed] his . . . middle finger up at [defendant] . . . . So there's just no . . . proof here that there's repeatedly maintaining a visual or physical proximity to a person by the . . . device.

The court dismissed the TRO on October 17, 2023.

A-0862-23

The trial judge subsequently submitted a letter of amplification pursuant to Rule 2:5-1(d), explaining that based on plaintiff's testimony alone, plaintiff has "no right to the relief of a[n] [FRO] . . . [as] judgment in [p]laintiff's favor cannot be rendered as even with all inferences given to [p]laintiff there has been no harassment or stalking that occurred."

On appeal, plaintiff contends the court erred in granting defendant's motion for dismissal at the close of plaintiff's evidence. We agree.

Rule 4:37-2(b) governs a motion for judgment at the close of plaintiff's case. The Rule provides, in part: "Whether the action is tried with or without a jury, such motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." When "accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied . . . ." Verdicchio v. Ricca, 179 N.J. 1, 30 (2004) (quoting Est. of Roach v. TRW, Inc., 164 N.J. 598, 612 (2000)).

Our Supreme Court has stated that dismissal under Rule 4:37-2(b) is only "appropriate when no rational [factfinder] could conclude from the evidence that an essential element of . . . plaintiff's case is present." Perez v. Professionally

6

Green, LLC, 215 N.J. 388, 407 (2013) (quoting Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 2.1 on <u>R.</u> 4:37-2(b) (2013)). The judicial function on a motion for involuntary dismissal "is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." <u>Dolson v. Anastasia</u>, 55 N.J. 2, 5-6 (1969).

Our review of a trial judge's ruling on a motion for an involuntary dismissal is de novo, applying the same standard as the trial court. <u>ADS Assocs. Grp., Inc. v. Oritani Sav. Bank</u>, 219 N.J. 496, 511 (2014).

A trial court's determination of whether an FRO should be granted is governed by a two-step inquiry set forth in <u>Silver</u>, 387 N.J. Super. at 125-27. Under the first step, a trial court must determine, by a preponderance of the evidence, whether one or more predicate acts were committed by defendant against plaintiff. <u>Id.</u> at 125-26. Second, the trial court asks whether an FRO is necessary to protect plaintiff from immediate danger or further acts of domestic violence. <u>Id.</u> at 126-27.

Plaintiff asserts he presented sufficient evidence to support the predicate acts of stalking and harassment and withstand an involuntary dismissal.

Stalking is a predicate act of domestic violence under N.J.S.A. 2C:25-19(a), as defined in N.J.S.A. 2C:12-10, which provides, in pertinent part:

> a. As used in this act:
>
> (1) "Course of conduct" means repeatedly maintaining a visual or physical proximity to a person . . . or repeatedly conveying, or causing to be conveyed, verbal or written threat or threats conveyed by any other means of communication or threats implied by conduct or a combination thereof directed at or toward a person.
>
> (2) "Repeatedly" means on two or more occasions.
>
> . . . .
>
> b. A person is guilty of stalking . . . if he purposefully or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for his safety or the safety of a third person or suffer other emotional distress.
>
> [N.J.S.A. 2C:12-10.]

The statute is not limited by section (b) to a "stalker-defendant who purposefully or knowingly intended that his course of conduct would cause a reasonable victim to fear bodily injury or death." State v. Gandhi, 201 N.J. 161, 187 (2010). Instead, the statute "prohibits a defendant from purposefully or knowingly engaging in a course of conduct, as defined in N.J.S.A. 2C:12-10(a)(1), that would cause such fear in an objectively reasonable person." Ibid.

8

Here, the trial judge determined, at the close of plaintiff's case, that plaintiff did not establish defendant engaged in repeated conduct and that plaintiff's fears were not objectively reasonable. However, in giving all reasonable inferences to plaintiff, reasonable minds could differ whether defendant was using the app to track plaintiff, whether defendant filed police reports attempting to cause plaintiff to violate the FRO, and whether defendant instigated plaintiff's FRO violation.

Plaintiff's testimony regarding defendant's alleged conduct could constitute repeated behavior: defendant's continuous use of the app and the filing of approximately fifty-five police reports. Plaintiff expressed his fear for his wellbeing several times, reiterating the serious consequences resulting from a violation of an FRO. Therefore, plaintiff presented sufficient evidence to withstand a motion for an involuntary dismissal.

For the same reasons, the court erred in concluding plaintiff did not establish the predicate act of harassment. Under N.J.S.A. 2C:33-4(c), harassment is defined as: "[A] person commits a petty disorderly persons offense if, with purpose to harass another, he [e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person."

9

Our Supreme Court has stated a violation of subsection (c) "requires proof of a course of conduct . . . that is alarming or it may be a series of repeated acts if done with the purpose 'to alarm or seriously annoy' the intended victim." J.D. v. M.D.F., 207 N.J. 458, 478 (2011). "[S]eriously annoy" is defined as meaning "to weary, worry, trouble, or offend." Id. at 478 (quoting State v. Hoffman, 149 N.J. 564, 581 (1997)).

Plaintiff's testimony cited above, if taken as true and given all reasonable inferences, established that defendant tracked plaintiff's location, filed numerous police reports attempting to cause him to violate the FRO, and confronted him on one occasion which resulted in a violation of the FRO. Again, reasonable minds may differ and find plaintiff established the predicate act of harassment.

We reverse the order dismissing the FRO and remand to the trial court for a new trial. After hearing all of the evidence presented by both parties, the court must analyze the Silver prongs and determine whether plaintiff is entitled to an FRO.

Reversed and remanded for proceedings in accordance with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0862-23