SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**In the Matter of Registrant R.H. (A-20/21-23) (088232)**

**Argued May 1, 2024 -- Decided July 1, 2024**

**RABNER, C.J., writing for a unanimous Court.**

Megan's Law requires individuals who commit certain sex offenses to register with a law enforcement agency. If they meet certain requirements, they can apply to terminate their obligation to register. One requirement is "that the person has not committed an offense within 15 years following conviction or release from a correctional facility for any term of imprisonment imposed." N.J.S.A. 2C:7-2(f) (emphasis added). Another is that the person is "not likely to pose a threat to the safety of others." Ibid. Here, the Court considers whether the requirement to remain offense-free applies to juveniles who are adjudicated delinquent.

R.H. was adjudicated delinquent of aggravated sexual assault in 2009 and has lived offense-free since. The trial court denied R.H.'s motion to terminate his Megan's Law obligations based on the fifteen-year waiting period in subsection (f), which had not yet ended.

T.L. was adjudicated delinquent of aggravated sexual assault in 2005 and was convicted in 2015 of a petty disorderly persons offense for using offensive language. He filed a motion to terminate his Megan's Law obligations in May 2022. The trial court denied T.L.'s request based on his 2015 conviction.

The Appellate Division affirmed both trial court judgments in a consolidated opinion. In re Registrant R.H., 475 N.J. Super. 460, 462 (App. Div. 2023). The Court granted certification. 256 N.J. 352 (2024); 256 N.J. 331 (2024).

**HELD:** Based on the plain language the Legislature used in crafting N.J.S.A. 2C:7-2(f), the requirement to remain offense-free for fifteen years applies to juveniles who are prosecuted as adults and convicted of a listed sex offense, or released from a correctional facility, but not to those who are adjudicated delinquent in the family court. Consistent with the law's text, however, all registrants including juveniles must satisfy the second requirement -- the public safety requirement -- to be eligible to terminate their obligations under Megan's Law. Here, the offense-free prong does not apply to R.H. and T.L. because they were adjudicated delinquent, and not

1

convicted, of a sex offense. The Court therefore remands each matter to the appropriate trial court to determine whether there is clear and convincing evidence that R.H. and T.L. satisfy the public safety prong.

1. Cases in which juveniles are accused of misconduct can proceed in different ways. For more serious matters, juveniles can be waived to the Criminal Part, where their cases proceed as though they were adults and they can be "convicted" if found guilty. N.J.S.A. 2A:4A-26.1(f)(1). Less serious allegations are resolved in the Family Part, where a juvenile found culpable is "adjudicated delinquent." N.J.S.A. 2A:4A-41. As a result, adults and some juveniles are "convicted," while other juveniles are "adjudicated delinquent." The two concepts are distinct. (pp. 13-14)

2. N.J.S.A. 2C:7-2(f) has several components. As a threshold matter, it applies to individuals who are "required to register" but are not subject to lifetime registration under subsection (g). Subsection (g) does not apply to juveniles. The remaining two prongs are (1) whether a person has been offense-free for fifteen years, and (2) whether the individual does not likely pose a threat to public safety. The public safety prong is straightforward. It has no limiting or qualifying language and plainly applies to everyone required to register -- adults and juveniles alike. The first prong contains additional, qualifying language, namely, that the registrant has remained offense-free "following conviction or release from a correctional facility." N.J.S.A. 2C:7-2(f). That language encompasses adults as well as some juveniles, but it does not expressly extend to individuals who have been "adjudicated delinquent" or "acquitted by reason of insanity." Those terms appear at various places throughout Megan's Law but not in subsection (f). To apply the offense-free prong of subsection (f) to all juveniles -- that is, to those adjudicated delinquent of a sex offense as well as those convicted of one -- would require that the Court imply or add language the Legislature included elsewhere in Megan's Law but left out of subsection (f), which the Court cannot do. Based on the statute's plain language, the offense-free prong of subsection (f) does not apply to juveniles adjudicated delinquent. The Court explains why dicta from In re Registrant J.G., 169 N.J. 304 (2001), and State in Interest of C.K., 233 N.J. 44 (2018), do not affect that conclusion. (pp. 15-22)

3. Under today's ruling, juveniles who are adjudicated delinquent may apply to terminate their obligations under Megan's Law before reaching age eighteen. If they do, they must still demonstrate, by clear and convincing evidence, that they are "not likely to pose a threat to the safety of others" to obtain relief. N.J.S.A. 2C:7-2(f); C.K., 233 N.J. at 77. Judges commonly look to whether an individual has made progress over a period of time both during confinement and afterward in the community. Although the offense-free prong of subsection (f) does not apply to juveniles adjudicated delinquent, proof of the commission of a later offense would be relevant to assess whether a person poses a public safety risk. (pp. 22-23)

4.  For juveniles who are convicted of an offense, the fifteen-year look-back period starts from the time of conviction for the <u>predicate</u> sex offense or release from a correctional facility, whichever is later.  <u>See</u> <u>In re Registrant H.D.</u>, 241 N.J. 412, 421 (2020).  The period does not reset after the commission of a later offense.  (p. 24)

5.  Both R.H. and T.L. were adjudicated delinquent of aggravated sexual assault. Because they were not convicted of an offense, subsection (f)'s first prong -- the requirement to remain offense-free for fifteen years -- does not apply to them.  To be eligible to terminate their Megan's Law obligations, R.H. and T.L. must each satisfy the second prong and demonstrate they are "not likely to pose a threat to the safety of others."  N.J.S.A. 2C:7-2(f).  (pp. 24-26)

**REVERSED and REMANDED to the trial court.**

**JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in CHIEF JUSTICE RABNER's opinion.**

3

SUPREME COURT OF NEW JERSEY
A-20/21 September Term 2023
088232

In the Matter of
Registrant R.H.

_____

In the Matter of
Registrant T.L.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
475 N.J. Super. 460 (App. Div. 2023).

| Argued | Decided |
|--------|---------|
| May 1, 2024 | July 1, 2024 |

Jonathan Edward Ingram, Assistant Deputy Public
Defender, argued the cause for appellant T.L. in A-20-23
(Jennifer N. Sellitti, Public Defender, attorney; Jonathan
Edward Ingram, of counsel and on the briefs).

Jesse M. DeBrosse, Assistant Deputy Public Defender,
argued the cause for appellant R.H. in A-21-23 (Jennifer
N. Sellitti, Public Defender, attorney; Jesse M. DeBrosse,
of counsel and on the briefs).

Maura M. Sullivan, Assistant Prosecutor, argued the
cause for respondent State of New Jersey in A-20-23
(Grace C. MacAulay, Camden County Prosecutor,
attorney; Maura M. Sullivan, of counsel and on the
briefs, and Matthew T. Spence, Assistant Prosecutor, on
the briefs).

Sarah A. Spanarkel, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued the cause for

respondent State of New Jersey in A-21-23 (Christine A. Hoffman, Acting Gloucester County Prosecutor, attorney; Sarah A. Spanarkel, of counsel and on the briefs).

Alexander Shalom argued the cause for amici curiae American Civil Liberties Union of New Jersey and Rutgers Criminal and Youth Justice Clinic (American Civil Liberties Union of New Jersey Foundation, Rutgers Criminal and Youth Justice Clinic, and Lowenstein Sandler, attorneys; Alexander Shalom, Jeanne LoCicero, Laura Cohen, Liana Irizarry, and Natalie Kraner, on the brief).

Claude Caroline Heffron argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; Claude Caroline Heffron and Joshua P. Law, on the brief).

Kaili E. Matthews, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Kaili E. Matthews, of counsel and on the brief).

---

CHIEF JUSTICE RABNER delivered the opinion of the Court.

---

Megan's Law requires individuals who commit certain sex offenses to register with a law enforcement agency. If they meet certain requirements, they can apply to terminate their obligation to register. One requirement is "that the person has not committed an offense within 15 years following <u>conviction</u> or release from a correctional facility for any term of imprisonment imposed." N.J.S.A. 2C:7-2(f) (emphasis added). Another is that the person is "not likely to pose a threat to the safety of others." <u>Ibid.</u>

2

This consolidated appeal raises a novel question: whether the requirement to remain offense-free applies to juveniles who are adjudicated delinquent. Based on the plain language the Legislature used in crafting the statute, we find that the requirement applies to juveniles who are prosecuted as adults and convicted of a listed sex offense, or released from a correctional facility, but not to those who are adjudicated delinquent in proceedings in the family court.

Consistent with the law's text, however, all registrants including juveniles must satisfy the second requirement -- the public safety requirement -- to be eligible for termination of their obligations under Megan's Law.

Because the Appellate Division reached a different conclusion regarding the first requirement, we reverse its judgment and remand both cases involved in this appeal to the trial court for further proceedings.

I.

To provide relevant background information, we begin with a brief overview of Megan's Law.

The Legislature enacted Megan's Law, N.J.S.A. 2C:7-1 to -23, in 1994 to combat "[t]he danger of recidivism posed by sex offenders." N.J.S.A. 2C:7-1(a). The law imposes a scheme to register sex offenders and notify the public about offenders who present a danger to children. Ibid.

3

Megan's Law requires "[a] person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity" of certain sex offenses to register with law enforcement. Id. at -2(a)(1). Section 2(b) of the statute defines the term "sex offense" and lists various offenses that can trigger Megan's Law obligations. Id. at -2(b).

Offenders are required to register with the police department where they live. Id. at -2(c). They must provide personal information -- their name, social security number, physical description, date of birth, address, place of employment, school enrollment status, and other details -- as well as fingerprint specimens and a brief description of the offense. Id. at -4(b)(1) to (2). Registrants are required to notify law enforcement if they change their address, employment, or school enrollment status. Id. at -2(d)(1). Failure to register or inform law enforcement of a change of address or status is a third-degree crime. Id. at -2(a)(3), -2(d)(1).

Megan's Law also provides for public notification that is keyed to the level of risk a registrant poses. Id. at -8. There are three levels or tiers. For Tier One, the low level of risk of re-offense, notification is limited to "law enforcement agencies likely to encounter the person registered." Id. at -8(c)(1). For Tier Two, the moderate level of risk, notification is also made to "organizations in the community including schools, religious and youth

4

organizations." Id. at -8(c)(2).  For Tier Three, the high level of risk, notification must also "reach members of the public likely to encounter the person registered," in accordance with the Attorney General's Guidelines.  Id. at -8(c)(3); see also Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws 17-18, 42-46 (rev. Feb. 2007), https://www.nj.gov/oag/dcj/megan/ meganguidelines-2-07.pdf (adopted pursuant to N.J.S.A. 2C:7-8(a)).

Offenders are classified based on a series of risk factors and the use of a Registrant Risk Assessment Scale (Scale).  See N.J.S.A. 2C:7-(8)(b); Attorney General Guidelines 27, Ex. E, F.  Mental health experts and law enforcement officials developed the Scale, and tier classifications based on it are entitled to deference.  In re Registrant C.A., 146 N.J. 71, 82, 108 (1996). "[C]lassifications based on the Scale are subject to judicial review and modification on a case-by-case basis."  Id. at 108-09.

Information about certain sex offenders is included in a central registry that is made available to the public on the internet.  N.J.S.A. 2C:7-12, -13.

Sections 2(f) and 2(g) together govern motions to terminate a person's obligations under Megan's Law.  Pursuant to subsection (g), individuals who are convicted, adjudicated delinquent, or acquitted by reason of insanity for

certain sex offenses, or for more than one sex offense, are required to register for life. Id. at -2(g).[1]

A person required to register who is not subject to subsection (g) may apply to the trial court "to terminate the obligation upon proof that the person has not committed an offense within 15 years following conviction or release from a correctional facility for any term of imprisonment imposed, whichever is later, and is not likely to pose a threat to the safety of others." Id. at -2(f).

## II.

### A.

At age fifteen, R.H. sexually assaulted his younger stepbrother. R.H. admitted his misconduct when the police interviewed him in the presence of his father. On October 14, 2009, R.H. was adjudicated delinquent of one count of aggravated sexual assault. The trial court sentenced him to three years' probation -- eighteen months at a residential treatment facility followed by eighteen months of aftercare treatment. He was successfully discharged in 2012 and has lived offense-free since 2009.

---

[1] As discussed later, the Court in State in Interest of C.K. held that subsection (g)'s lifetime registration and notification requirements are unconstitutional as applied to juveniles. 233 N.J. 44, 48 (2018).

Since 2009, R.H. has been evaluated five times for the risk of re-offense. In 2011, he was designated at Tier Two. In his most recent evaluation in October 2020, a psychologist concluded that R.H. "is not likely to commit a sexual offense in the future." The following month, the trial court designated R.H. as a Tier Two level of risk for re-offense but limited community notification to the Tier One level.

R.H. later filed a motion to terminate his obligations under Megan's Law. The trial court found that the fifteen-year waiting period in subsection (f) applied to juveniles who were adjudicated delinquent for an offense they committed when they were older than fourteen. The court explained it was bound by this Court's ruling in In re Registrant J.G., 169 N.J. 304 (2001), and therefore denied R.H.'s application.[2] Because the trial court bifurcated the motion and considered the statutory question first, it did not address whether R.H. posed a threat to others.

---

[2] The Court in J.G. held that for "juveniles adjudicated delinquent for sexual offenses committed when they were under age fourteen, Megan's Law registration and community notification orders shall terminate at age eighteen if the" trial court finds the individual "is not likely to pose a threat to the safety of others." 169 N.J. at 337.

## B.

On July 11, 2005, T.L. was adjudicated delinquent of one count of aggravated sexual assault for engaging in sexual acts with his younger sisters and a cousin as part of a game of "truth or dare." T.L. was fifteen or sixteen at the time. After the abuse was reported to the police, T.L. revealed that he had been sexually abused when he was a child.

The trial court placed T.L. on probation for three years and ordered him to attend therapy, which he successfully completed. In November 2008, the court designated T.L. at Tier Two but ordered notification obligations at Tier One.

In 2015, T.L. was convicted of a petty disorderly persons offense under N.J.S.A. 2C:33-2(b) for using offensive language. He was ordered to pay $508 in fines and fees. T.L. has remained offense-free since.

A psychologist evaluated T.L. in March 2022. She found that he "present[ed] a low risk of engaging in future acts of sexually inappropriate behaviors" and was "not likely to pose a threat to others in the community."

T.L. filed a motion to terminate his Megan's Law obligations in May 2022. Among other things, he argued that the offense-free prong of subsection (f) does not apply to individuals adjudicated delinquent of a qualifying sex offense. The trial court rejected the argument and denied T.L.'s request. The

8

court explained it was bound by this Court's rulings in State in Interest of C.K., 233 N.J. 44 (2018), and J.G. The court acknowledged but did not make a finding on the psychologist's conclusion that T.L. did not likely pose a threat to others.

C.

R.H. and T.L. both appealed, and the Appellate Division heard oral argument for the cases back-to-back. It later affirmed both trial court judgments in a consolidated opinion. In re Registrant R.H., 475 N.J. Super. 460, 462 (App. Div. 2023).

The appellate court concluded that the fifteen-year offense-free requirement in subsection (f) applies to juveniles adjudicated delinquent. Id. at 467, 470. The court explained it was "bound by the dictum" in C.K. and J.G. Id. at 467. It was also "satisfied that the plain and ordinary meaning of the" language in subsection (f) supported its conclusion. Id. at 470. The Appellate Division reasoned that the Megan's Law scheme "is predicated on" who must register "under subsections (a) and (b), which includes individuals who were adjudicated delinquent." Ibid.

The Appellate Division rejected the constitutional arguments R.H. and T.L. raised. Id. at 471. In doing so, the court stated that "juveniles, fifteen years after another offense, may apply for release from Megan's Law

9

requirements if they demonstrate they are unlikely to pose a threat to the safety of others."  Ibid.

We granted R.H.'s and T.L.'s petitions for certification.  256 N.J. 352 (2024); 256 N.J. 331 (2024).  We also granted leave to the Attorney General, the Association of Criminal Defense Lawyers of New Jersey (ACDL), and the Rutgers Criminal and Youth Justice Clinic and American Civil Liberties Union of New Jersey, appearing jointly, to participate as friends of the court.

III.

R.H. and T.L. submitted a joint brief.  They contend the Appellate Division mistakenly found that the fifteen-year offense-free requirement in subsection (f) applies to individuals who have been adjudicated delinquent and seek to terminate their obligations under Megan's Law.  They argue that the Appellate Division conflated "conviction" with "adjudication of delinquency" in subsection (f) and relied on non-binding dicta from other cases.

The ACDL echoes those arguments.  It emphasizes that the relevant plain language of subsection (f) extends to people who are convicted, not to those adjudicated delinquent.

The State, represented by the Gloucester and Camden County Prosecutors, urges the Court to affirm the judgment of the Appellate Division. The State relies on the plain language of subsection (f) and "controlling

10

precedent" in J.G. and C.K. The Attorney General similarly maintains that the statute's text and structure, its legislative intent, and the Court's precedents all direct that individuals who are required to register under Megan's Law, including juveniles like R.H. and T.L., must demonstrate that they remained offense-free for fifteen years and are not likely to pose a threat to others to be eligible to terminate their registration requirements.

The parties and amici disagree as to whether the Appellate Division's reading of subsection (f) would render it unconstitutional. For that reason, they advance different positions on whether the doctrine of constitutional avoidance should apply here.

IV.

We begin with R.H. and T.L.'s statutory argument about the scope of subsection (f).

When we interpret the meaning of a statute, our review is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 181 (2024). Our goal "is to determine and give meaning to the Legislature's intent." State v. Thompson, 250 N.J. 556, 572 (2022) (quoting State v. Carter, 247 N.J. 488, 513 (2021)). To do so, we start with the plain language of the statute, which is typically the "'best indicator' of legislative intent." W.S. v. Hildreth, 252 N.J. 506, 518 (2023) (quoting State v. Lane, 251 N.J. 84, 94 (2022)). We give

11

words their ordinary meaning and read them "in the context of 'related provisions . . . to give sense to the legislation as a whole.'" DeSimone, 256 N.J. at 181 (quoting Perez v. Professionally Green, LLC, 215 N.J. 388, 399 (2013)).

When "the plain language of a statute is clear, our task is complete." Savage v. Township of Neptune, 257 N.J. 204, 215 (2024). When language is ambiguous, we may consider extrinsic evidence, including legislative history. DiProspero v. Penn, 183 N.J. 477, 492-93 (2005).

If "the Legislature has carefully employed a term in one place yet excluded it in another, it should not be implied where excluded." State v. Cooper, 256 N.J. 593, 605 (2024) (quotation omitted). In other words, courts should not add language to section (x) that the Legislature chose to include in section (y) but left out of (x). The reason is simple: "The Legislature knows how to write [a] . . . statute." Murray v. Plainfield Rescue Squad, 210 N.J. 581, 593 (2012).

V.

R.H. and T.L. contend that subsection (f)'s requirement that individuals remain offense-free for fifteen years does not apply to juveniles adjudicated delinquent of a predicate offense. The Court has not considered the novel argument before. The parties understandably reason from dicta in prior

12

decisions, see State v. Rose, 206 N.J. 141, 183 (2011), but the language the parties focus on did not directly address the issue before the Court today.

A.

Cases in which juveniles are accused of misconduct can proceed in different ways. For more serious matters, prosecutors can file a motion to "seek[] waiver of jurisdiction of a juvenile delinquency case" from the "Family Part to an appropriate court." N.J.S.A. 2A:4A-26.1(a).

The waiver statute applies to juveniles age fifteen and older at the time of the alleged conduct. Id. at (c)(1). The State must demonstrate "[t]here is probable cause to believe that the juvenile committed a delinquent act which if committed by an adult would constitute" one of a number of enumerated offenses, including criminal homicide, carjacking, aggravated sexual assault, sexual assault, or kidnapping, among other listed crimes. Id. at (c)(2).

The statute lists various factors prosecutors must consider when deciding whether to seek a waiver. Id. at (b), (c)(3). If a court is clearly convinced the prosecution abused its discretion in considering those factors, the court can deny the motion to waive jurisdiction. Id. at (c)(3). If the motion is granted, juveniles can be waived to the Criminal Part, where their cases proceed as though they were adults. Id. at (f)(1). If a jury later finds an individual culpable, the juvenile is "convicted" of the offense. Ibid.

13

In general, less serious allegations are resolved in the Family Part. If a judge in that setting finds a juvenile is culpable, the individual is "adjudicated delinquent." N.J.S.A. 2A:4A-41.

As a result, in our system, adults and some juveniles are "convicted," while other juveniles are "adjudicated delinquent." The two concepts are distinct in law and practice. See, e.g., In re Expungement Application of D.J.B., 216 N.J. 436, 446-48 (2014) (distinguishing between juvenile adjudications and convictions in the context of expungement); State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) ("[A] juvenile adjudication does not constitute conviction of a crime and may not be used for impeachment purposes."). The distinction has meaning when it comes to Megan's Law as well.[3]

---

[3] Our focus throughout this opinion is on the term "conviction" in the first prong of subsection (f), not the phrase that follows it, "or release from a correctional facility for any term of imprisonment imposed." Because the facts do not require us to consider the issue and the parties have not addressed it, we do not discuss the difference between juvenile and correctional facilities or whether a juvenile adjudicated delinquent can ever be imprisoned in a "correctional facility for any term of imprisonment imposed." N.J.S.A. 2C:7-2(f). Any reference to a juvenile adjudicated delinquent in this opinion presumes that the individual has not been released from a correctional facility for a term of imprisonment imposed.

14

B.

Against that backdrop, we turn to the meaning of subsection (f) of

Megan's Law, which allows for termination of the statute's requirements if

certain conditions are met.  We quote subsection (f) in full:

> Except as provided in subsection g. of this section, a
> person required to register under this act may make
> application to the Superior Court of this State to
> terminate the obligation upon proof that the person has
> not committed an offense within 15 years following
> conviction or release from a correctional facility for any
> term of imprisonment imposed, whichever is later, and
> is not likely to pose a threat to the safety of others.

> [N.J.S.A. 2C:7-2(f).]

Subsection (f) has several components.  As a threshold matter, it applies

to individuals who are "required to register" but are not subject to lifetime

registration under subsection (g).  As noted earlier, subsection (g) does not

apply to juveniles.  See C.K., 233 N.J. at 48 (finding subsection (g)

unconstitutional as applied to juveniles).

Our primary focus is on the remaining two prongs:  (1) whether a person

has been offense-free for fifteen years, and (2) whether the individual does not

likely pose a threat to public safety.

The latter prong, the public safety prong, is straightforward.  It has no

limiting or qualifying language and plainly applies to everyone required to

register -- adults and juveniles alike.

15

The first prong contains additional, qualifying language, namely, that the registrant has remained offense-free "following conviction or release from a correctional facility." N.J.S.A. 2C:7-2(f). As discussed above, that language encompasses adults as well as some juveniles. They must demonstrate that they have remained offense-free for fifteen years since their "conviction or release from a correctional facility." Ibid. (emphasis added).

Subsection (f)'s requirement that a person remain offense-free, however, does not expressly extend to individuals who have been "adjudicated delinquent" or "acquitted by reason of insanity." Those terms appear at various places throughout Megan's Law but not in subsection (f). See, e.g., id. at -2(a)(1) (identifying individuals who must register); -2(b)(2) (listing offenses that require registration); -2(b)(3) (directing that similar sex offenses require registration); -2(g) (requiring lifetime registration in certain instances).

More specifically, and as noted earlier, the opening paragraph of N.J.S.A. 2C:7-2 directs that an individual "who has been convicted, adjudicated delinquent or found not guilty by reason of insanity" of a listed offense must register in accordance with Megan's Law. Id. at -2(a)(1) (emphasis added).

Subsection (g) likewise states that "[a] person required to register under this section who has been convicted . . . , adjudicated delinquent, or acquitted

16

by reason of insanity" of certain sex offenses, or of more than one sex offense, is not eligible under subsection (f) to terminate their Megan's Law obligations. Subsections (f) and (g) work in tandem. Subsection (f) cross-references (g) but leaves out any reference to individuals who are adjudicated delinquent or found not guilty by reason of insanity.

In yet another section, the Legislature provided that adjudications of delinquency for certain offenses shall not be considered as sex offenses under the act. N.J.S.A. 2C:7-2(b)(4)(a) to (c). In other words, convictions for those offenses are considered, but not juvenile adjudications.

The Legislature also drafted various exceptions to the requirement that information be made available on the internet. Megan's Law exempts individuals adjudicated delinquent of a sex offense, id. at -13(d)(1), but has more limited exceptions for those convicted or acquitted by reason of insanity, id. at -13(d)(2) to (3).

Those examples demonstrate that the Legislature made policy choices in the way it crafted Megan's Law. It decided when to extend the law to juveniles adjudicated delinquent and when not to.

The Legislature made that very type of choice in the way it drafted subsection (f). The plain language the Legislature used in the first prong applies to adults and to only those juveniles convicted of a sex offense -- not to

17

juveniles adjudicated delinquent or individuals found not guilty by reason of insanity.

To apply the offense-free prong of subsection (f) to all juveniles -- that is, to those adjudicated delinquent of a sex offense as well as those convicted of one -- would require that we imply or add language the Legislature included elsewhere in Megan's Law but left out of subsection (f). We cannot do so. See Cooper, 256 N.J. at 605; Murray, 210 N.J. at 593. We rely instead on the plain words of a statute to interpret its meaning. See Savage, 257 N.J. at 215-17.

Because the text of the statute is clear, we need not search for legislative history on this point. DiProspero, 183 N.J. at 492. In any event, the parties agree there is no relevant history that explains why the Legislature crafted part of subsection (f) to reach only individuals who have been convicted of a sex offense. We note, however, that other states treat juvenile offenders differently than adults. See People in Int. of T.B., 489 P.3d 752, 769-70 (Colo. 2021) (surveying states and noting more lenient treatment of juvenile sex offenders); J.G., 169 N.J. at 327-30 (same).

Based on the statute's plain language, we hold that the first prong of subsection (f), which requires proof that an individual has been offense-free for fifteen years, applies only to adults and to those juveniles who have been convicted or released from a correctional facility for a term of imprisonment

18

imposed.  The first prong of subsection (f) does not apply to juveniles

adjudicated delinquent.[4]

C.

The rulings by the trial courts and the Appellate Division relied on dicta

in J.G. and C.K.

J.G. involved a ten-year-old who committed a sex offense; his eight-

year-old cousin was the victim.  169 N.J. at 309.  As part of a negotiated plea

agreement, J.G. was adjudicated delinquent of conduct that would constitute

second-degree sexual assault if committed by an adult.  Id. at 310-12.

The Court attempted to harmonize the tension between the protective,

rehabilitative philosophy of the Code of Juvenile Justice and the possibility of

lifetime registration under Megan's Law for juvenile sex offenders.  Id. at 320,

324-25.  The Court observed, among other things, that the Code "limit[s] the

duration of restrictions and punishments . . . imposed as a result of

delinquency adjudications."  Id. at 324-25 (discussing N.J.S.A. 2A:4A-47(a),

which provides that orders of disposition terminate when a juvenile "attains

---

[4] We recognize that the plain language of the offense-free prong of subsection
(f) likewise does not extend to individuals acquitted by reason of insanity.  If a
court determines that a person cannot be released without posing a danger to
oneself or to the community, the individual is committed to a mental health
facility, subject to periodic review.  N.J.S.A. 2C:4-8; State v. Krol, 68 N.J. 236,
263 (1975).

19

the age of 18, or three years from the date of the order whichever is later unless such order involves incarceration or is sooner terminated"). Subsections (g) and (f) of Megan's Law, by contrast, allow for lifetime registration. See id. at 319.

The Court noted that the Code distinguished "between juveniles over and under the age of fourteen." Id. at 325-27. At the time, juveniles age fourteen and older could be waived and tried as adults. N.J.S.A. 2A:4A-26(a)(1) (repealed by L. 2015, c. 89, § 6).[5]

To reconcile Megan's Law and the Code of Juvenile Justice, the Court held

> that with respect to juveniles adjudicated delinquent for sexual offenses committed when they were under age fourteen[,] Megan's Law registration and community notification orders shall terminate at age eighteen if the Law Division, after a hearing held on motion of the adjudicated delinquent, determines on the basis of clear and convincing evidence that the delinquent is not likely to pose a threat to the safety of others.
>
> [J.G., 169 N.J. at 337.]

---

[5] In 2015, the Legislature increased the minimum age for waiver to fifteen. N.J.S.A. 2A:4A-26.1(c)(1). Fourteen-year-olds can no longer be prosecuted as adults.

20

The Court explained its holding was "faithful to the rehabilitative goals of the Juvenile Code without undermining the salutary objectives of Megan's Law." Ibid.

Neither the parties nor the Court in J.G. focused on whether the fifteen-year offense-free language in subsection (f) applied to juveniles who had been adjudicated delinquent.

The Court addressed a different issue in C.K.: whether subsection (g) was unconstitutional as applied to juveniles. 233 N.J. at 48. The Court in C.K. thoroughly canvassed the history of Megan's Law and its jurisprudence, the Juvenile Code, rulings by the United States Supreme Court and this Court that recognize juveniles are different from adults, as well as relevant rulings from other State Supreme Courts. Id. at 60-72. The Court "conclude[d] that subsection (g)'s lifetime registration and notification requirements as applied to juveniles" bore "no rational relationship to a legitimate governmental objective" and "violate[d] the substantive due process guarantee of Article I, Paragraph 1 of the New Jersey Constitution." Id. at 48.

The decision in C.K. is based entirely on the constitutionality of subsection (g). In dicta, the Court referenced subsection (f) as well. See, e.g., id. at 75 ("Subsection (f) imposes presumptive lifetime registration and notification requirements for sex offenses covered by subsection (g) but allows

for a juvenile sex offender to be relieved of those requirements fifteen years after his juvenile adjudication or release from a correctional facility, provided he has been offense-free and 'is not likely to pose a threat to the safety of others.'"); see also similar language at 47-48; 48-49; 77.

Once again, however, the Court in C.K. did not evaluate a question that was not before it: whether the fifteen-year offense-free clause in subsection (f) applied to juveniles who have been adjudicated delinquent. The dicta in J.G. and C.K. is not controlling here. See In re Protest of Contract for Retail Pharmacy Design, ___ N.J. ___ n.3 (2024) (slip op. at 27 n.3).

We add one more point about J.G. The decision held that registration and notification requirements terminate at age eighteen for juveniles adjudicated delinquent of sexual offenses committed when they were under age fourteen, provided they can satisfy the public safety prong in subsection (f). J.G., 169 N.J. at 337.

Under today's ruling, juveniles who are adjudicated delinquent are not subject to subsection (f)'s requirement that they must be offense-free for fifteen years. They may apply to terminate their obligations under Megan's Law before reaching age eighteen. If they do, they must still demonstrate, by clear and convincing evidence, that they are "not likely to pose a threat to the safety of others" to obtain relief. N.J.S.A. 2C:7-2(f); C.K., 233 N.J. at 77.

22

The State and the Attorney General contend that, under the above interpretation of subsection (f), juveniles adjudicated delinquent could theoretically apply to terminate their registration requirements immediately after the requirements are imposed. They submit that such an outcome is inconsistent with the purpose and operation of Megan's Law.

To shoulder their burden, registrants must present proofs that satisfy the public safety prong in subsection (f) by clear and convincing evidence. As part of the fact-intensive inquiry the law calls for, offenders generally present psychological evaluations; proof they have successfully completed sex offender treatment, counseling, and therapy; and evidence of employment, among other things.

To develop a persuasive record of rehabilitation takes time. Judges commonly look to whether an individual has made progress over a period of time both during confinement and afterward in the community. With that in mind, although the offense-free prong of subsection (f) does not apply to juveniles adjudicated delinquent, proof of the commission of a later offense would be relevant to assess whether a person poses a public safety risk.

In reality, an application filed immediately after a person's reporting obligation begins is unlikely to succeed. And a trial judge's individualized findings on a motion under subsection (f) are subject to appellate review.

23

D.

In <u>In re Registrant H.D.</u>, the Court held that individuals who apply to terminate their Megan's Law requirements must demonstrate they have been offense-free for fifteen years from the time of conviction for the <u>predicate</u> sex offense or release from a correctional facility, whichever is later. 241 N.J. 412, 421 (2020). The fifteen-year look-back period does not reset after the commission of a later offense. <u>Ibid.</u> The same principle applies to juveniles convicted of an offense. We do not adopt the contrary statement in <u>R.H.</u> <u>See</u> 475 N.J. Super. at 471.

VI.

We now apply the above principles to R.H. and T.L. Both were adjudicated delinquent of aggravated sexual assault. Because they were not convicted of an offense, subsection (f)'s first prong -- the requirement to remain offense-free for fifteen years -- does not apply to them.

To be eligible to terminate their Megan's Law obligations, R.H. and T.L. must each satisfy the second prong and demonstrate they are "not likely to pose a threat to the safety of others." N.J.S.A. 2C:7-2(f).

R.H. presented a report by a psychologist who evaluated him in October 2020 and concluded he "is not likely to commit another sexual offense" and "does not present a risk of harm to others in the community." In light of the

24

trial court's ruling on the statutory question, the court did not reach or make a finding about whether he poses a threat to the safety of others.

T.L. presented a report from a psychologist who evaluated him in March 2022. She concluded that T.L. "present[ed] a low risk of engaging in future acts of sexually inappropriate behaviors" and was "not likely to pose a threat to others in the community." The trial court rejected T.L.'s application based on its understanding of the scope of subsection (f). The court "recognize[d]" the psychologist's conclusion but did not make a finding on that issue.

Accordingly, we remand each matter to the appropriate trial court to determine whether there is clear and convincing evidence that R.H. and T.L. satisfy subsection (f)'s public safety prong.

Because we resolve these appeals on statutory grounds, we do not address arguments about whether the doctrine of constitutional avoidance should apply.

## VII.

For the reasons stated above, we find that the first prong of subsection (f) -- which requires proof that an individual has been offense-free for fifteen years -- does not apply to R.H. and T.L. because they were adjudicated delinquent, and not convicted, of a sex offense. We therefore reverse the

25

judgment of the Appellate Division and remand both matters to the trial court for further proceedings consistent with this opinion.


      JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in CHIEF JUSTICE RABNER's opinion.